UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 05-80376-CIV-RYSKAMP/VITUNAC

FRANCES HANSEN,

    Plaintiff,

v.

WHEATON VAN LINES, INC.

    Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court pursuant to Defendant Wheaton Van Lines, Inc.'s ("Defendant") Motion for Summary Judgment, filed September 15, 2006 **[DE 29]**. Plaintiff Francis Hansen ("Plaintiff") responded on October 18, 2006 **[DE 37]**. Defendant replied on October 26, 2006 **[DE 39]**. The Court held a hearing on the motion on November 1, 2006. This motion is ripe for adjudication.

### I. BACKGROUND

This action arises out of alleged loss and/or damage to Plaintiff's household goods that were transported by Defendant from Memphis, Tennessee to Palm Beach Gardens, Florida on or about August 17, 2004. Plaintiff has resided in a number of different locations during the past ten years, both in this country and abroad. Over the years, Plaintiff has had five moves with Defendant, each time dealing with Jack Knox ("Knox") of QS Storage & Transfer Company ("QS Storage & Transfer") in Memphis, Tennessee. (Pl. Depo., 19.) QS Storage & Transfer is a Tennessee corporation engaged in business as a local and intrastate moving and storage company within the State of Tennessee. QS Storage & Transfer also maintains an agency relationship with

Defendant whereby QS Storage & Transfer performs services in conjunction with interstate shipments transported by Defendant.

Plaintiff first met Knox over ten years ago when she moved from the State of Washington to her mother's home in Memphis, Tennessee. (Pl. Depo., 8  Knox Aff.) Plaintiff contracted with Defendant for this move to Memphis, and, accordingly, QS Storage & Transfer was the destination agent. (Knox Aff.) Plaintiff moved to England in September 2001 to study at Oxford University and lived there for a year. (Pl. Depo., 154.) While abroad, Plaintiff stored certain of her personal property at the QS Storage & Transfer warehouse. (Knox Aff.) Plaintiff then returned to Tennessee, from which she moved to Washington, D.C. in August of 2002. Again, Plaintiff made these arrangements with QS Storage & Transfer. (Pl. Depo., 25.) Plaintiff resided in Washington, D.C. for slightly less than one year and returned to Tennessee in July of 2003. (Pl. Depo., 25.) Again, Plaintiff made the arrangements for this move from Washington, D.C. back to Memphis, Tennessee directly with Knox. (Pl. Depo., 27, 31.) Plaintiff understands that the bill of lading issued in relation to the Washington, D.C. – Memphis, Tennessee move was the contract for said move. (Pl. Depo., 29.) Plaintiff arranged for the shipment being moved out of Washington, D.C. to be placed into storage at the QS Storage & Transfer warehouse in Memphis, Tennessee. (Pl. Depo., 23.) Plaintiff and her son then flew from Washington, D.C. directly to Tennessee, where they stayed with her mother. (Pl. Depo., 36.) Plaintiff recalls Knox calling her to tell her that her shipment had arrived at the warehouse from Washington, D.C. (Pl. Depo., 37.)

In July of 2003, Plaintiff returned to England with her son to be near her boyfriend and to resume her studies at Oxford. (Pl. Depo., 38.) While Plaintiff was in England, her shipment

remained in storage at the QS Storage & Transfer warehouse in Memphis, Tennessee. (Pl. Depo., 13, 15.) While she was in England, Plaintiff requested that QS Storage & Transfer send her certain seasonal clothing and accessories. Because of space restrictions, she packed other items of clothing and accessories and had them shipped from England to the QS Storage & Transfer warehouse in January, 2004. (Pl. Depo., 15 – 19, 136 – 38.) Plaintiff and her son moved from England to Tennessee in February 2004 because of concerns about her mother's health. Plaintiff enrolled her son in school in Tennessee for the remainder of the school year. (Pl. Depo., 23, 39.)

Plaintiff decided to move to Palm Beach Gardens, Florida during the summer of 2004. (Pl. Depo., 39 – 40.) Plaintiff contacted Knox to arrange for the delivery of her shipment out of storage to Florida. (Pl. Depo., 39.) Plaintiff purchased third-party coverage for the move from Memphis, Tennessee to Palm Beach Gardens, Florida from Baker International Insurance Agency[1] ("Baker") arranged for her by Knox. (Pl. Depo. 72.) Knox met with Plaintiff in Tennessee to review the arrangements and necessary documents for her move to Florida. (Pl. Depo., 43.) Among the documents issued to Plaintiff at that time was an Estimate/Order for Service for her move from Memphis, Tennessee to Palm Beach Gardens, Florida. Plaintiff understood that this estimate, together with the bill of lading constituted her contract for the move from Memphis to Palm Beach Gardens. (Pl. Depo., 13.)

Plaintiff flew to Florida with her son, and the shipment was delivered to her Palm Beach Gardens residence on August 17, 2004. Plaintiff had not seen the majority of the items comprising her shipment since they were picked up from her home in Washington, D.C. in July,

---

[1] Plaintiff had also purchased third party coverage through Baker for her move from Washington, D.C. to Memphis, Tennessee in July of 2003, as well as during the period of storage at the QS Storage & Transfer warehouse. (PL. Depo., 74 – 75.)

2003.  (Pl. Depo., 40.)  At delivery, Plaintiff noted that certain items were missing and that other items were damaged.  (Pl. Depo., 46 – 48.)  As it turns out, a portion of her shipment was not tendered to the driver when he came to pick up the goods for delivery to Florida.  The items that Plaintiff shipped to QS Storage & Transfer from England were stored in a different section of the warehouse than the remainder of her shipment and were inadvertently overlooked when the driver arrived.  Knox advised Plaintiff that he would arrange to have these items delivered to her.  (Pl. Depo., 67 – 69.)

Plaintiff contacted both Knox at QS Storage & Transfer and Baker on the day of the move.  (Pl. Depo., 44 – 45.)  She submitted a claim to Baker within a matter of days.  (Pl. Depo., 67 – 68, 82.)  Baker offered Plaintiff $1,655.00 and issued a check to her for that amount.  In the meantime, QS Storage & Transfer had the remaining items delivered to Plaintiff as an overflow shipment.

Plaintiff filed a three-page written claim with Defendant consisting of a completed form and two attached handwritten pages identifying items claimed as missing and/or damaged.  (Pl. Depo., 88 – 90.)  Of the 23 items claimed as lost or damaged, Plaintiff only inserted an amount claimed for two items: a plate, ($25.00), and a chair, ($164.00), bringing the total amount claimed to $189.00.

Defendant disclaimed liability for the claim based upon Plaintiff's prior claim with Baker.  Plaintiff's agreement with Baker specifically acknowledged as follows:

> I hereby assign and transfer to Baker International Insurance any
> and all claims and recoveries arising out of the shipment of my
> household goods.  I hereby authorize the carrier to release any and
> all moving documents to Baker International Insurance.  I have not
> filed a claim for these damages with any other entity.

Pursuant to the foregoing language, Baker made a subrogation demand against Defendant, and Defendant paid to Baker the sum of $341.00 as a full and final settlement of their obligation as to Plaintiff's claim.

Dissatisfied with the resolution of the claims she filed with both Baker and Defendant, Plaintiff initiated this litigation.  Although Plaintiff acknowledged that the claim form is the only list of items that she ever sent to Defendant, she also acknowledged that this list is incomplete. (Pl. Depo., 104 – 05, 97.)  Plaintiff further acknowledged at her deposition that she identified numerous items in her Answers to Interrogatories that were not previously included on the written claim she filed with Defendant.  (Pl. Depo., 158, 161 – 162, 165 – 166, 181 – 182, 187, 190, 193.)  Plaintiff never provided a monetary amount for any of the items claimed in this action other than the $189.00 for the plate and chair, prior to serving her discovery responses.  (Pl. Depo., 158 – 159, 165 – 166).  In Interrogatory # 17, Plaintiff was asked to "State the exact amount claimed in this action."  Plaintiff's answer stated the following: "Exact amount of claim is undetermined at this time."  Plaintiff has never advised Defendant of the amount being claimed in this lawsuit.  Along those lines, Plaintiff testified as follows:

> Q:  Have you ever advised Wheaton in writing the amount of your claim?
>
> A:  No.

(Pl. Depo., 97.)  Plaintiff acknowledged that as of August 15, 2006, she still did not know how much she is claiming in this lawsuit.  Such was confirmed at Plaintiff's deposition, wherein she testified as follows:

> Q:  And I asked you almost 3 weeks ago when we began this deposition on July 26th, if you could tell me the amount that you were claiming in this lawsuit, you told me no.  My question to you is, as we sit here

>today on August 15th, are you able to tell me the amount you are claiming against Wheaton in this lawsuit?
>
>A: No.

(Pl. Depo., 205.) Plaintiff seeks damages, costs and attorneys' fees pursuant to the Carmack Amendment.

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)).  An issue is "material" if it is a legal element of the claim under applicable substantive law that may affect the resolution of the action.  See Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).  An issue is "genuine" if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party.  See id., 106 S.Ct. at 2510.  The movant may meet this standard by presenting evidence demonstrating the absence of a dispute of material fact or by showing that the nonmoving party has not presented evidence in support of an element of its case on which it bears the burden of proof.  Celotex, 477

U.S. at 322-23, 106 S.Ct. at 2552-53.  The moving party need not supply "affidavits or other similar materials negating the opponent's claim."  Id., 106 S.Ct. at 2552-53.

Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)).  Although the nonmovant need not present evidence that would be admissible at trial, it may not rest on his pleadings.  Id., 106 S.Ct. at 2553.  "[T]he plain language of rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322; 106 S.Ct. at 2552.  See also Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1281-82 (11th Cir. 1999).

## III.  DISCUSSION

**1.     The Carmack Amendment**

This action is filed pursuant to the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, formerly 49 U.S.C. § 11707, which preempts the field of interstate commerce.  The law is well established that the remedies available under the Carmack Amendment preempt all state, common and statutory law regarding the liability of an interstate common carrier for claims arising out of shipments within the purview of said statute.  See American Eye Way, Inc. v. Roadway Package System, Inc., 875 F.Supp. 820, 821 (S.D.Fla. 1995); United Van Lines, Inc. v. Shooster, 860 F.Supp. 826, 828-29 (S.D.Fla. 1992); Smith v. UPS, 296 F.3d 1244, 1246 (11th Cir. 2002), *cert. denied* 537 U.S. 1172, 123 S.Ct. 1000, 154

8

L.Ed.2d 914 (2003). Accordingly, the rights and liabilities of the parties are governed by federal law and the terms and conditions set forth in the bill of lading and tariff. The bill of lading and tariffs have the force of a federal statute and cannot be varied under any pretext. See Pennsylvania Railroad v. Greene, 173 F.Supp. 657, 658 (S.D.Ala. 1959).

**2.      Insufficiency of Plaintiff's Claim**

Defendant moves for summary judgment on the grounds that Plaintiff failed to submit a proper claim form. At the top of the reverse side of the Bill of Lading governing this transaction appears the following heading: "CONTRACT TERMS AND CONDITIONS OF UNIFORM HOUSEHOLD GOODS BILL OF LADING NOTICE OF AVAILABILITY OF PUBLISHED TARIFF." The first two (2) sentences immediately under the foregoing heading state:

> Wheaton Van Lines, Inc. ("Wheaton" or "Carrier") publishes tariffs which set forth the terms, conditions and prices for the transportation services it provides. The applicable tariff provisions are incorporated herein by reference.

Among the terms and conditions addressed in the Bill of Lading is the written claim requirement:

> Section 6. As a condition precedent to recovery, a claim for any loss or damage, injury or delay, must be filed in writing with WHEATON within nine (9) months after delivery to shipper and/or consignee as shown on face hereof, or in case of failure to make delivery, then within nine (9) months after a reasonable time for delivery has elapsed;…Where a claim is not filed or suit is not instituted thereon in accordance with the foregoing provisions, WHEATON shall not be liable and such a claim will not be paid.

The above language is reiterated in Defendant's tariff. The foregoing language is also consistent with the Carmack Amendment, 49 U.S.C. § 14706(e), which authorizes carriers to require that a written claim be submitted within a specified period of time as long as the period is not less than nine months.

As noted, the rules and regulations governing interstate shipments also control the rights and obligations of the parties hereto.  The Code of Federal Regulations sets forth the "minimum filing requirements" of any such written claim, specifically, that the claim:

1. Sufficiently identify the property being claimed;

2. Assert liability for alleged loss, damage, injury or delay; and

3. Makes a demand for the "payment of a specified or determinable amount of money."

49 C.F.R. §1005.2(b).  These requirements are reiterated in Defendant's tariff.

Siemens Power Transmission and Distribution, Inc. v. The Norfolk Southern Railway Company, 420 F.3d 1243, 1245, 1250 (11th Cir. 2005) held that 49 C.F.R. §1005.2(b) applies to both litigated and uncontested claims and is to be interpreted literally "in light of this purpose, which is to provide the carrier adequate notice of the claim so that it can conduct an independent investigation of the damage, not to release the carrier of liability."  The Eleventh Circuit applied a "liberal" construction of this regulation to overrule the decision of the Middle District of Florida that a claim for repairs "estimated to be between $700,000.00 and $800,000.00" was insufficient.  Id. at 1252.  The Eleventh Circuit specifically held that because the estimated range was consistent with the actual damages proven by Plaintiff, it was sufficient to put the carrier on notice for purposes of evaluating the claim.  See id.

Here, Plaintiff's claim lacks the degree of specificity present in the claim in Siemens.  As Plaintiff acknowledged, she did not insert the amount of the claim she filed with Defendant.  She inserted a monetary demand for two of the 23 items being claimed for a total sum of $189.00.  Not only did Plaintiff not demand a specific amount at the time she made her claim, Plaintiff still did not know the exact amount she was claiming in this action on July 26, 2006 and August 15,

10

2006, the dates of her deposition. Plaintiff's demands do not come close to the estimated range given by the shipper in the Siemens case and, accordingly, even under the most liberal interpretation possible of 49 C.F.R. §1005.2(b), Plaintiff's claim does not satisfy the minimum requirement of what constitutes a written claim.[2] See Salzstein v. Bekins Van Lines, Inc., 993 F.2d 1187, 1189-91 (5th Cir. 1993)(a notice that did not specify any damage amount did not suffice); Nedlloyd Lines, B.V.Corp., v. Harris Transport Co., 922 F.2d 905, 908 (1st Cir. 1991) (a letter claim that "in [no] way specified the amount money claimed" failed to satisfy the requirements of 49 C.F.R. §1005.2(b)); R.T.A. Corp. v. Consolidated Rail Corp., 594 F.Supp. 205, 210 (S.D.N.Y. 1984)("if damages are sought it is for the claimant to say exactly what it seeks, rather for the carrier, against its self-interest, to say what the claimant deserves.").

Plaintiff maintains that the spirit of the written claim requirement was satisfied because all that is required is for the carrier to have "reasonable notice." The written claim requirement is an inflexible rule of law, however. B.A. Walterman Co. v. Pennsylvania Railroad Co., 295 F.2d 627, 628 (6th Cir. 1981). Claims for property damage filed against an interstate carrier have been denied when they were filed only *one day late*. Pathway Bellows, Inc. v. Blanchette, 603 F.2d 900, 905 (2d Cir. 1980). The Regulations not only set forth the requirements for written claims, but also address "claims filed for uncertain amounts." See 49 C.F.R. § 1005.2(d). As noted therein, a carrier

> shall not, however, voluntarily pay a claim under such circumstances unless and until a formal claim in writing for specified or determinable amount of money shall have been filed in accordance with the provisions of paragraph (b) of this section.

---

[2] Additionally, the foregoing further demonstrates that Plaintiff is unable to satisfy one of the essential elements of a claim under the Carmack Amendment, specifically, "the amount of the loss." Margetson v. United Van Lines, Inc., 785 F.Supp. 917, 922 (D.N.M. 1991).

11

The only amount Plaintiff demanded within the nine-month period was $189.00. Plaintiff supplemented with her July 22, 2005 and August 4, 2005 answers to interrogatories and supplement thereto, but these discovery responses were not served within nine months from the date of delivery of either the initial shipment or the overflow shipment. Plaintiff now avers that she has obtained appraisals of two missing chandeliers, but again, the nine-month deadline has long since expired.

Plaintiff also attempts to assert an estoppel theory because neither Knox nor Defendant told her to submit to receipts she claimed she told him she had for the items claimed as missing or damaged. Yet the claim forms that Plaintiff completed, signed and sent to Defendant clearly states, immediately below Plaintiff's signature:

> In making this claim, [you] must be prepared to justify the value you have placed on the lost or damaged articles. Submit any documents which would be required in support of your claim, including the paid freight bill in bill of lading.

Additionally, the instructions for filing a claim contained on the reverse side of the claim forum state as follows:

> 6.  Copies of original purchase receipts should be submitted with your claim for items requiring replacement.
>
> 7.  Please make certain that all items you wish to claim are included on your claim form, and that the claim does constitute your complete and entire claim.

Plaintiff filed this action within the nine-month period, yet she still failed to set forth a specific monetary demand in her pleading. It took an additional 14 months for her to make such a demand, but this demand came virtually on the eve of trial, well after the discovery deadline expired. Plaintiff cannot suggest that she has somehow satisfied the written claim requirements

or that the nine-month rule should be extended more than two years past the date of delivery. Accordingly, Defendant is entitled to summary judgment as a result of Plaintiff's failure to file a written claim that satisfies the minimum requirements set forth above.

### 3. Lack of Standing

Defendant also claims it is entitled to summary judgment on the grounds that Plaintiff lacked standing to bring this action as a result of her assignment of her claim to Baker. Upon signing the claim form that Plaintiff filed with Baker, she specifically agreed to "assign and transfer to Baker International Insurance any and all claims and recoveries arising out of the shipment of my household goods." The record demonstrates that Baker thereafter subrogated against Defendant, and that Defendant negotiated a reduced payment with Baker as a full and final settlement of Plaintiff's claim. By assigning all such rights, Plaintiff has no standing to pursue the instant action. Once the assignor assigns its rights to pursue a claim against a third party to another, the assignor retains no right to sue the third party. An assignment transfers all rights in the thing assigned. See Lawyers Title Insurance Co., Inc. v. Novastar Mortgage, Inc., 862 So.2d 793, 798 (Fla. 4th DCA 2004); Rose v. Teitler, 736 So.2d 122, 122 (Fla. 4th DCA 1999). An individual's failure to read or investigate the terms of the contract she signed is not a defense to enforcement of the contract. See Manning v. Interfuture Trading, Inc., 578 So.2d 842, 845 (Fla. 4th DCA 1991) (" The rule is well established that a party's mere failure to read a contract and thus to know and understand its terms and implications is not grounds for rescission or revocation."); Allied Van Lines, Inc. v. Bratton, 351 So.2d 344, 347 (Fla. 1977) (contract is binding on a party who signs a contract whether or not he or she has read it).

**4.      No Retention of Interstate Character**

Plaintiff maintains that this action arises out of one continuous shipment from Washington, DC to Palm Beach Gardens, Florida, spanning the course of 13 months, from July 2003 August 2004.  This theory must fail as it is inconsistent with the record evidence, including Plaintiffs understanding of the moves at issue, as well as the shipping documents.

Plaintiffs' goods remained in storage in Memphis from July 2003 up to and including her move to Florida in August 2004.  At her deposition, Plaintiff acknowledged receiving the letter from Defendant dated December 29, 2003, which noted that the interstate nature of her shipment as "storage-in-transit" would terminate at the end of January 2004, at which time the shipment would be converted to permanent local storage.  Item 17 of the governing tariffs explains that, upon the conversion of the shipment for storage-in-transit to permanent local storage, Defendants liability terminated and rested with US Storage & Transfer.  The missing chandeliers were not among the items listed on the inventory prepared by Defendant's driver when he picked up the shipment from Memphis in August of 2004.

Furthermore, Plaintiff' s deposition testimony acknowledges three separate transactions: Washington, DC to Memphis, Tennessee in July 2003, storage at the warehouse in Memphis, Tennessee from July 2003 to August 2004, and a subsequent interstate move out of storage from Memphis, Tennessee to Palm Beach Gardens, Florida in August 2004.  Plaintiffs' goods lost their interstate character during the time they were stored in Memphis.  Accordingly, Defendant's liability terminated and was not resurrected until Plaintiff decided to move to Florida in 2004.

14

## IV. CONCLUSION

THE COURT, having considered the pertinent portions of the record and having heard oral argument from both parties, hereby.

ORDERS AND ADJUDGES that Defendant's Motion for Summary Judgment, filed September 15, 2006 **[DE 29]**, is GRANTED.  Final judgment shall issue by separate order.

DONE AND ORDERED act Chambers in the West Palm Beach, Florida this 9th day of November, 2006.

Copies provided:            S/ Kenneth L. Ryskamp
all parties and counsel of record    KENNETH L. RYSKAMP
                                       UNITED STATES DISTRICT JUDGE